# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5064 | DATE | August 25, 2004 |
| CASE TITLE | James Cooper | v | Sheriff of Will County, et al |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOJune 14, 2004CKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing set for 10/6/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss counts I and II is granted. Defendants' motion to dismiss counts III, IV and V is denied. Plaintiff is ordered to file a second amended complaint on or before 9/15/04. Defendants' answers are due by 9/30/04.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 31 |
| \ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES COOPER, Special Administrator of the )
Estate of PATRICK L. COOPER, deceased, )
)
Plaintiff, )
) No. 03 C 5064
v. )
) Judge Robert W. Gettleman
OFFICE OF THE SHERIFF OF WILL COUNTY, )
RICHARD KOWALSKI, DANIEL TAPPER )
DEPUTY VRAKAS, DEPUTY HAMBRICK )
#1534, DEPUTY BURDNICKI, DEPUTY STAR )
#1391, DEPUTY STAR # 1253, and the COUNTY )
OF WILL, )
)
Defendants. )

DOCKETED
AUG 3 0 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff James Cooper, Special Administrator of the Estate of Patrick L. Cooper, deceased, initiated the instant suit against Paul J. Kaupas in his official capacity as Sheriff of Will County, the Office of the Sheriff of Will County, and the County of Will, seeking damages arising from decedent's death while in custody as a pretrial detainee at the Will County Jail. After this court granted defendants' motion to dismiss on December 18, 2003, plaintiff filed an amended complaint adding deputies Richard Kowalski, Daniel Tapper, Deputy Vrakas (sued as "Deputy Star #1391),[1] Deputy Hambrick #1534, Deputy Burdnicki, and Ron Poturalski (sued as

---

[1] Plaintiff's amended complaint at law filed on December 31, 2003, names Deputy Vrakas and Deputy Star #1391 as separate deputy sheriff defendants. On April 16, 2004, defendants filed Individual Defendants' Motion for Leave to Join Defendants' Motion to Dismiss Plaintiff's Amended Complaint, in which it named Deputy Vrakas and added the parenthetical "(sued herein as 'Star #1391')." Defendants' Reply Brief in Support of Motion to Dismiss filed on May 28, 2004, refers to Deputy Vrakas without mention of Deputy Star #1391. The court therefore regards Deputy Vrakas as being Deputy Star #1391.

"Deputy Star #1253"),[2] as additional defendants and eliminating Paul J. Kaupas in his official capacity as Sheriff of Will County as a defendant.

Counts I and II allege state law claims for negligence against all defendants for failure to provide timely medical treatment to decedent. Counts III and IV allege state law claims for willful and wanton conduct against all defendants for failure to provide timely medical treatment to decedent. Count V alleges a civil rights claim under § 1983 against the defendant deputies for failure to provide timely medical treatment to decedent.

Defendants Office of the Sheriff of Will County and the County of Will, joined by defendants Richard Kowalski, Daniel Tapper, Deputy Vrakas, Deputy Hambrick, Deputy Burdnicki, and Ron Poturalski, have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, defendants' motion to dismiss is granted as to Counts I and II and denied with respect to Counts III, IV, and V.

## FACTS[3]

Plaintiff James Cooper is the surviving father of Patrick L. Cooper ("decedent") and was appointed Special Administrator of the Estate of Patrick L. Cooper, and brings the instant lawsuit on behalf of the estate. The Office of the Sheriff of Will County ("Sheriff's Office") is a law enforcement agency that operates the Will County Jail in Joliet, Illinois. The County of Will

---

[2] Plaintiff's amended complaint at law names "Deputy Star #1253" as a deputy sheriff defendant. Individual Defendants' Motion for Leave to Join Defendants' Motion to Dismiss Plaintiff's Amended Complaint names Ron Poturalski as a deputy sheriff defendant and adds the parenthetical "(sued herein as 'Star #1253')." The court therefore regards Ron Poturalski as being Deputy Star #1253.

[3] The facts are taken as alleged from plaintiff's amended complaint at law.

2

("Will County") and the Sheriff's Office employed, supervised, and trained deputies Richard Kowalski, Daniel Tapper, Deputy Vrakas, Deputy Hambrick, Deputy Burdnicki, and Ron Poturalski (together, the "Deputies"), who were on duty at the time of the alleged incident giving rise to the instant action.

Decedent was placed under arrest and transferred to the general inmate population of the Will County Jail in Joliet, Illinois, where he was awaiting trial. The Sheriff's Office and the Deputies were aware that decedent had an asthma condition that required medication, and prior to the alleged incident giving rise to the instant action, decedent suffered an asthma attack requiring inhaler medication. On July 7, 2003, decedent suffered a serious asthma attack that required immediate medical treatment. At the onset and during the attack, decedent and other inmates informed the Deputies on duty that decedent required immediate medical treatment for his attack. Defendants failed to provide decedent with timely medical care, and he sustained injuries that resulted in his death.

## DISCUSSION

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Dismissal is proper only when it "appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

I. Counts I and II

Counts I and II allege wrongful death and survival action claims for negligent conduct against defendants for failing to provide decedent with timely medical treatment. Defendants' motion to dismiss Counts I and II argues that defendants are immune from liability under the Tort Immunity Act, 745 ILCS 10/4-105, which provides:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

In response, plaintiff points to Section 3-6016 of the Counties Code, which states that a "sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." 55 ILCS 5/3-6016. Plaintiff argues that Section 3-6016 of the Counties Code "trumps" the Tort Immunity Act because it is a more specific provision, relying on the canon of statutory interpretation that specific provisions prevail over general provisions. Hernon v. E.W. Corrigan Construction Co., 595 N.E.2d 561, 563 (Ill. 1992).[4]

Upon review of the two statutory provisions, it appears, contrary to plaintiff's argument, that § 10/4-105 of the Tort Immunity Act is the more specific provision, because it addresses the limits of responsibility for medical care for a particular class of persons: prisoners. The Counties

---

[4]Plaintiff additionally argues that section 4-105 does not apply because plaintiff's allegations of negligence arise from negligently prescribed medical care. A review of the amended complaint, however, reveals that the allegations are unambiguously directed at defendants' failure to provide timely medical care to decedent.

4

Code addresses the sheriff's liability for the actions of his/her deputies generally, as to all classes of persons who claim to be injured by negligence of deputies. As a matter of statutory interpretation, § 10/4-105 of the Tort Immunity Act "trumps" the Counties Code as the more specific provision, and thus provides immunity against plaintiff's negligence claims. Accordingly, defendants' motion to dismiss Counts I and II is granted.

II. Counts III and IV

Counts III and IV allege wrongful death and survival action claims for willful and wanton conduct against defendants for failing to provide the decedent with timely medical treatment. Defendants have urged the court to dismiss these counts on several grounds, as discussed below.

a. *§ 10/6-105 and § 10/6-106*[5]

Defendants argue that Section 10/6-105 of the Tort Immunity Act provides immunity for failure to conduct a physical examination of decedent's medical condition and that Section 10/6-106 provides immunity for failing to diagnose that a person is afflicted with a physical illness. Defendants recognize that plaintiff does not allege a failure to diagnose decedent's condition or a failure to conduct a physical examination. Rather, plaintiff alleges that decedent's condition was correctly diagnosed during a physical examination before the alleged incident because the

---

[5] 745 ILCS 10/6-105 provides: "Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others."

745 ILCS 10/6-106(a) provides: "Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction."

Deputies were "aware" of decedent's condition and the decedent received medical treatment for a prior attack. As plaintiff argues, "once the correct diagnosis is made and treatment for it is prescribed, all immunity bets are off." Antonacci v. City of Chicago, 779 N.E.2d 428, 433 (Ill. App. 1st Dist. 2002). The court thus concludes that, based on the allegations of the amended complaint, §§ 10/6-105 and 106 do not require dismissal of Counts III and IV.

*b. § 10/4-103*[6]

Defendants also argue that § 10/4-103 of the Tort Immunity Act provides them absolute immunity for claims based on the failure to provide sufficient equipment, failure to provide sufficiently trained personnel, the failure to adequately supervise employees, and the failure to provide adequate facilities. While plaintiff's amended complaint does allege a failure to provide sufficiently trained personnel, the gravamen of plaintiff's complaint is defendants' failure to provide timely medical care and treatment to decedent. With those allegations in mind, the court concludes that § 10/4-103 of the Tort Immunity Act does not require dismissal of Counts III and IV.

*c. § 5/3-6016 of the Counties Code*

Defendants have also moved to dismiss Counts III and IV against the Sheriff's Office, arguing that 55 ILCS 5/3-6016 of the Counties Code bars all liability against a sheriff for the acts or omissions of his deputies where the deputies are charged with acting in a willful or wanton manner. Section 5/3-6016 provides:

---

[6] 745 ILCS 10/4-103 provides: "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such a facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners."

> The sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission.

The statute is silent as to willful and wanton conduct. Recently, in <u>Brown v. King</u>, 767 N.E.2d 357 (Ill. App. 1st Dist. 2001), the Illinois Appellate Court stated:

> It appears that the Counties Code actually expands the liability of the Sheriff by making him liable for the negligent acts of his deputies in addition to any liability the Sheriff might have for intentional and wanton misconduct of those same deputies under the Tort Immunity Act and traditional <u>respondeat superior</u> principles.

Defendants argue that <u>Brown</u> marks a departure from other cases, in both this district and the Illinois Appellate Court, that have held that § 3-6016 does not impose liability on the sheriff for a deputy's intentional or willful conduct. See <u>McCottrey v. Griffin</u>, No. 01 C 7490, 2002 WL 483414 (N.D. Ill. Mar. 29, 2002); <u>Chaney v. City of Chicago</u>, 901 F. Supp. 266 (N.D. Ill. 1995); <u>J.P. Miller Artesian Well Co. v. County of Cook</u>, 352 N.E.2d 372 (Ill. App. 1st Dist. 1976).

In addition to this precedent, defendants direct the court's attention to <u>De Correvant v. Lohman</u>, 228 N.E. 2d 592, 594 (Ill. App. 1st Dist. 1967), which analyzed a predecessor statute to § 5/3-6016 providing that "[t]he sheriff shall be liable for any neglect or omission of the duties of his office, when occasioned by a deputy, in the same manner as for his own personal neglect or omission." The <u>De Correvant</u> court, beginning with the premise that "Illinois courts have held that a public official is exempt from liability for the unlawful acts of his subordinates unless a statute creates liability," concluded that a plaintiff cannot utilize the provision quoted above "to further the allegations of his complaint which charged not neglect or omission, but intentional misconduct by the deputies." <u>De Correvant</u> is consistent with <u>Kelly v. Ogilvie</u>, 212 N.E.2d 279, 281 (Ill. App. 1st Dist. 1965), which stated that, "[a]ccording to long standing rules, a public

7

official having the direction of a subordinate employee is not thereby responsible for the latter's conduct. It is the underlying public body which is the principal or master."

The Brown court did not cite to De Correvant or Kelly. Nor did the court address the premise underlying the De Correvant court's decision, specifically that a public official is exempt from liability for the unlawful acts of his subordinates unless a statute creates liability.[7] The Brown court, however, did distinguish Chaney and Miller Artesian (which relied on De Correvant), arguing that "those cases stand for nothing more than that liability for the Sheriff for the intentional and wanton acts of his employees may not be premised on section 3-6016." The court continued, "We disagree with the use of Chaney and Miller Artesian ... as a springboard to finding that section 3-6016, through its silence on the subject, defeats common law claims of respondeat superior regarding intentional conduct."

As in Brown, and unlike Chaney and Miller Artesian, plaintiff's willful and wanton claims against the sheriff's office are not based on section 3-6016, but instead are presumably based on common law respondeat superior liability.[8] Although the Illinois Supreme Court has not spoken to this issue, Brown is the Illinois Appellate Court's most recent pronouncement on the subject, and the facts of the instant case are not sufficiently distinguishable from Brown to

---

[7]The Brown court instead cited to Barnett v. Zion Park District, 171 Ill.2d 378, 376 (Ill. 1996), for the proposition that "governmental units are liable in tort on the same basis as private tortfeasors except where a valid statute dealing with tort immunity imposes conditions upon that liability." Brown, 767 N.E.2d at 362.

[8]The amended complaint alleges (in paragraph 26) that the "Sheriff of Will county, by and through its... deputies [including the defendant Deputies], and the County of Will, owed a duty to refrain from willful and wanton conduct." Read liberally, this allegation states a claim for respondeat superior liability against the sheriff (although, as discussed below, the county is not responsible under this theory). Paragraph 29 erroneously alleges "negligent" rather than willful and wanton conduct (the subject of Count III), and must be amended to correct this error.

8

merit departure from its holding. See also Liberty Mutual Fire Insurance Co. v. Statewide Insurance Co., 352 F.3d 1098, 1101 (7th Cir. 2003) ("[T]he rulings of state appellate courts 'must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently.'") (quoting State Farm Mutual Auto Ins. Co. v. Pate, 275 F.3d 666 (7th Cir. 2001)). Accordingly, the court concludes that section 3-6016 does not defeat plaintiff's common law claims of respondeat superior liability.

d. *Pleading requirements for willful and wanton conduct*

Defendants also argue that plaintiff's complaint does not properly plead willful and wanton conduct because it fails to meet the Tort Immunity Act's statutory definition of willful and wanton conduct. Whether the conduct was willful or wanton is a question of fact, not to be decided on a motion to dismiss. "'The Federal Rules of Civil Procedures do not require a claimant to set out in detail the facts upon which he bases his claim.'" Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Instead, the rules simply require a "short and plain statement of the claim" that gives defendant fair notice of plaintiff's claim and the grounds on which it rests. Fed. R. Civ. P. 8(a); Id. at 168. Because plaintiff's complaint provides factual allegations and the types of claims alleged, the complaint satisfies the minimum requirements of notice pleading.

Defendants argue that "non-action" or "failure to take action" cannot support willful and wanton allegations, which are defined as a "course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. The Illinois Supreme

9

Court has held, however, that a rational trier of fact could find that an officer's failure to act showed "an utter indifference or conscious disregard" for a plaintiff's safety. Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. 1994). In the instant case, plaintiff has pled sufficient facts that a rational trier of fact could find the defendants' failure to provide medical care to show an utter indifference or conscious disregard for decedent's safety.

Defendants' motion to dismiss Counts III and IV is therefore denied.

III. Count V

Count V alleges a civil rights claim under § 1983 against the Deputies for failure to provide timely medical treatment to decedent. The Deputies have moved to dismiss Count V, arguing that plaintiff alleges no facts that give rise to a constitutional deprivation and that the complaint fails to establish individual liability against any particular deputy.

Plaintiff's complaint states that decedent was "awaiting trial," and as such was a pre-trial detainee. As a pre-trial detainee, decedent had the right to basic human needs including medical care and reasonable safety while in custody and cannot be deprived of these basic needs. Estelle v. Gamble, 429 U.S. 97 (1976); DeShaney v. Winnebago County Dept. of Soc. Servs, 489 U.S. 189, 200 (1989). Plaintiff and defendants agree that the § 1983 claim is based on the Fourteenth Amendment, which can be analyzed under the Eighth Amendment standard of "deliberate indifference," because there is little practical difference between the analysis required for Fourteenth Amendment due process claims and the Eighth Amendment standard. Weiss v. Cooley, 230 F.3d 1027 (7th Cir. 2000).

To meet the deliberate indifference standard, a plaintiff must show both an objective risk of danger and that the defendants had actual knowledge of the risk. Mayoral v. Sheahan, 245

F.3d 934, 938 (7th Cir. 2001). In the instant case, plaintiff has pled sufficient facts to show that there was an objective risk of danger, that the Deputies had actual knowledge of the risk by alleging that decedent had a prior asthma attack requiring medical treatment, and that the defendants were "aware" of decedent's condition and were told by decedent and other inmates that he was having an asthma attack. Defendants rely on Henderson v. Sheahan, 196 F.3d 839 (7th Cir. 1999), for the proposition that asthma attacks are not sufficiently serious to be constitutionally actionable and are not an objective risk of danger. Id. at 846. The Seventh Circuit, however, has not held that deliberate indifference toward an asthmatic condition is per se not constitutionally actionable. Rather, it has stated that a serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. at 846 (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). In the instant case, plaintiff alleges that decedent had an existing asthmatic condition that required medication prior to the incident in question, and also alleges that other inmates, or lay people, recognized and alerted the Deputies that decedent required immediate medical treatment. These allegations are sufficient at the pleading stage to withstand a motion to dismiss.

Finally, defendant argues that in order to assert a constitutional claim against the individual Deputies, plaintiff must point to specific acts or omissions attributable to each defendant because "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." Wolf-Lillie v. Sonquist, 699 F.2d 864, 870 (7th Cir. 1983). Plaintiff's complaint alleges that all of the Deputies were on duty at the time of

11

the incident and that all of them were deliberately indifferent to decedent's needs. The court understands the claims to apply to each individual deputy, and the complaint does not need to list the same claim for each deputy.

Accordingly, defendants' motion to dismiss Count V is denied.

IV. The County of Will

Defendants argue that although Will County may be a named defendant because it has a financial interest in the outcome of the judgment, it cannot be held liable for respondeat superior liability arising from claims against the Sheriff's Office or the Deputies. Defendants are correct that Will County is a proper defendant in the instant suit. In an answer to a certified question from the Seventh Circuit, the Illinois Supreme Court determined that, "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." Carver v. Sheriff of LaSalle County, 787 N.E.2d 127, 129 (Ill. 2003) ("Carver I"). After the court's ruling, the Seventh Circuit additionally noted that the Supreme Court of Illinois' answer "implie[d] an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." See Fed. R. Civ. P. 17, 19." Carver v. Sheriff of LaSalle County, Illinois, 324 F.3d 947, 948 (7th Cir. 2003).

Based on Carver I, Will County will be obligated to provide funds to pay any judgments that may be entered against the Sheriff's Office. Because Will County has a financial interest in the outcome of the litigation, it is a necessary party to the litigation and must not be dismissed. Robinson v. Sappington, 351 F.3d 317, 338 (7th Cir. 2003); Weber v. Keller, No. 03 C 8292, 2004 WL 1368792, at *2 (N.D. Ill. June 16, 2004) ("[B]ecause the County would be required to

pay if Weber succeeds in her lawsuit, the court will not dismiss the County from this action."); Cobbs v. Sheahan, No. 03 C 3841, 2003 WL 22514523, at *1 (N.D. Ill. Nov. 3, 2003) ("Because state law requires the county to pay if a plaintiff is successful in such a suit, the county must be named as a defendant so that it may veto potential settlements proposed at its expense.").

Although Will County must be a named party, it cannot be liable for claims against the Sheriff's Office on the basis of the respondeat superior doctrine, however. In Moy v. County of Cook, 640 N.E.2d 926 (Ill. 1994), the Supreme Court of Illinois ruled that a county is not liable for the actions of its sheriff under the respondeat superior doctrine because under Illinois law, the sheriff is a county officer, and an employer/employee relationship does not exist between the county and its sheriff. "Therefore, the county may not be held vicariously liable for the sheriff's alleged negligent conduct," but is a named defendant because of its duty to indemnify the Sheriff's Office for judgments rendered against it. Id. at 931. To the extent that plaintiff's amended complaint suggests otherwise, it must be amended accordingly.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss Counts I and II is granted. Defendants' motion to dismiss Counts III, IV, and V is denied. Plaintiff is ordered to file a second amended complaint conforming to this opinion on or before September 15, 2004; defendants shall file their answers on or before September 30, 2004. This matter is set for a report on status on October 6, 2004, at 9:00 a.m.

**ENTER:** **August 25, 2004**

Robert W. Gettleman
United States District Judge

13